**Opinion issued December 28, 2012.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00905-CR

———————————

**THERESA GARCIA INFANTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1218567**

---

## O P I N I O N

A jury convicted Theresa Garcia Infante of the felony offense of theft by a public servant of property with a value between $1,500 and $20,000 and sentenced her to two years' confinement, probated for two years. In three issues, Infante

challenges the sufficiency of the evidence to prove the value of the stolen property, the trial court's admission of an out-of-court statement, and the trial court's failure to submit an accomplice witness instruction. We affirm.

## Background

While employed by Harris County as a deputy constable, Infante worked a second job at a traffic control company. Infante's supervisor at the traffic control company was Billy Cable. Cable was arrested for theft of a golf cart, at which time he was in possession of a police radio. The police traced the radio back to Precinct 6 of the Harris County Constable's Office, where Infante was employed. Cable told the police that he had purchased the radio from Infante. The State charged Infante with stealing the radio—an offense heightened by the allegation that Infante obtained the radio through her role as a public servant. *See* TEX. PENAL CODE ANN. § 31.03(a), (e)(4)(A), (f)(1). Infante testified that she had not sold any radio to Cable, but that she had lent Cable a radio; she asserted that the radio she lent Cable was similar to the one stolen from the Harris County Constable's Office, but it was actually a radio owned by her husband's employer.

The jury convicted Infante and sentenced her to two years' confinement, probated for two years. This appeal followed.

2

**Legal Sufficiency of the Value Evidence**

One element of the crime for which the jury convicted Infante is that the value of the stolen property was "$1,500 or more but less than $20,000." *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(A). Infante challenges the legal and factual sufficiency of the evidence to prove this element, contending that the State offered no evidence of the stolen property's fair market value and instead improperly relied on evidence of the stolen property's replacement value.

## A.    Standard of review

We review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the verdict to determine whether any rational fact-finder could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). Evidence is legally insufficient when the "only proper verdict" is acquittal. *Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2218 (1982). We give deference to the jury's responsibility to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We review the factual sufficiency of the evidence under the same appellate standard of review as that for legal sufficiency. *Brooks v. State*, 323 S.W.3d 893, 894–913 (Tex. Crim. App. 2010).

**B.     Value evidence**

The State presented testimony on the value of the stolen radio from Keith LeJeune, a manager in the radio network operations center at Harris County's radio shop. At the time of trial, LeJune had worked at Harris County's radio shop for two years; before that, he worked at Harris County's emergency management department, where he was involved in managing radios and communications for that department. LeJeune is certified in electronics and has been a licensed radio operator for more than ten years.

LeJeune was able to trace the stolen radio through its radio identification number—a number the radio shop programs into Harris County radios for tracking—and the radio shop's records. He testified that Harris County purchased the radio for $2,131.46 in 2000. Since that time, the radio's manufacturer has stopped producing the radio model that was stolen (the Motorola MTS 2000), replacing it with a new model (the XTS 5000). An XTS 5000 may be purchased without software and additional features for $1,700, but it will not operate without the necessary software. LeJeune testified that it would have cost Harris County

approximately $4,000 to replace the MTS 2000 radio with an operating XTS 5000 radio in 2008, when the radio was stolen.

On cross-examination, LeJeune testified that the manufacturer no longer made parts for the MTS 2000 and that the radio shop cannibalized parts from other MTS 2000 radios to repair and replace parts on the MTS 2000 radios. He testified that the MTS 2000 had "a low value" and that he would not purchase one. Counsel for Infante repeatedly described the stolen radio as "obsolete," and elicited testimony from LeJeune agreeing with that description of the radio.

## C. Sufficiency of value evidence

Under the Penal Code's "Theft" chapter, the value of property is "(1) the fair market value of the property . . . at the time and place of the offense; or (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." TEX. PENAL CODE ANN. § 31.08(a)(1), (2). The jury charge likewise defined "value" as "the fair market value of the property . . . at the time and place of the offense, or if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft." Fair market value is "the amount the property would sell for in cash, giving a reasonable time for selling it." *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991) (emphasis omitted); *see Smiles v. State*, 298 S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

5

The determinative issue here is whether the radio's fair market value was unascertainable, such that the State could rely on evidence of the radio's replacement cost under section 31.08(a)(2) of the Penal Code. *See* TEX. PENAL CODE ANN. § 31.08(a) (defining "value" as the fair market value of the property at the time and place of the theft or, "if the fair market value of the property cannot be ascertained," the cost of replacing the property within a reasonable time after the theft). We hold that, under the circumstances of this case, the evidence was sufficient to allow the jury to determine that the fair market value of the radio was not ascertainable and to rely on evidence of the radio's replacement cost.

LeJeune testified that the 2000 model was no longer being manufactured, it was difficult to repair because its parts likewise were no longer available and therefore repairs required locating and taking parts from another radio of the same model, it was "hard to get," it had depreciated in value before it was stolen, it was "obsolete," and its value was "low" but he could not state an amount for its value. He also testified that he "wouldn't buy one." More importantly, LeJeune unequivocally testified that he was "not able to determine the fair market value of the MTS 2000 because it's been outdated." The jury, therefore, could have reasonably concluded that this evidence demonstrated that the 2000 model's fair market value in 2008 could not be ascertained; they therefore could rely on evidence of its replacement cost.

Ascertainment of market value presupposes an existing, established market. *See Yazdani-Beioky v. Tremont Tower Condo. Ass'n, Inc.*, No. 01-10-00107-CV, 2011 WL 1434837, at *5 (Tex. App.—Houston [1st Dist.] Apr. 14, 2011, no pet.) (observing that the determination of what willing buyer would pay willing seller presupposes existing, established market) (citing *Wendlandt v. Wendlandt*, 596 S.W.2d 323, 325 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ). "For example, the Texas Supreme Court has recognized, as a matter of common knowledge, 'that used household goods, clothing and personal effects have no market value in the ordinary meaning of that term.'" *Id.* (quoting *Crisp v. Sec. Nat'l Ins. Co.,* 369 S.W.2d 326, 328 (Tex. 1963)). While such items may appear on eBay or other resale markets from time to time, these sales may not be sufficiently frequent or similar to allow ascertainment of an item's market value.

LeJeune did not concede the existence of an open market for the MTS 2000 or the value afforded to that model in such a market. Counsel for Infante asked LeJeune if he would be surprised to learn that "you can find stuff like that on E-bay for 124 bucks?" LeJeune responded that he would not be surprised and had "seen them there before like that." Infante's counsel's assertion embedded within his question is not evidence; nor is LeJeune's agreement evidence of the value of the MTS 2000 in 2008. Not only were this question and answer vague, they were not limited to the time of the theft.

7

The State's evidence of the cost to replace the radio is legally and factually sufficient to support the jury's verdict. Under these circumstances, we hold that the value evidence was sufficient to support the jury's verdict.

We overrule Infante's first issue.

## Hearsay and Right of Confrontation

Infante's second issue challenges the trial court's admission of certain testimony from LeJeune about the recovered radio. LeJeune testified that he gave the recovered radio to a technician who pulled the serial number off the radio via the programming cable. With the serial number, LeJeune was able to generate certain information about the stolen radio and its post-theft use from the radio shop's database. Infante complains that LeJeune could not testify to or rely on the radio's serial number because LeJeune did not obtain the radio's serial number himself and therefore had no personal knowledge of the radio's serial number beyond what the radio technician told him, which was inadmissible hearsay. Infante further complains that the admission of this hearsay violated Infante's constitutional right of confrontation because Infante did not have the opportunity to cross-examine the other technician.

## A. Standard of Review

Hearsay and Confrontation Clause objections are two separate issues, governed by different standards of review. *See Wall v. State*, 184 S.W.3d 730,

8

742–43 (Tex. Crim. App. 2006); *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004). Hearsay invokes evidentiary rules, while the Confrontation Clause invokes constitutional rights. *See Paredes*, 129 S.W.3d at 535. We review hearsay challenges to a trial court's admission of evidence under an abuse of discretion standard. *Wall*, 184 S.W.3d at 743. We review a constitutional legal ruling, such as whether a statement is testimonial or non-testimonial under the Confrontation Clause, de novo.[1] *Id.* at 742.

## B. Hearsay

Even assuming that LeJeune's testimony as to the radio's serial number was hearsay, the radio's serial number was documented in other evidence admitted at trial. Specifically, the State filed business records from the radio shop containing the radio's serial number and various other records relating to the radio.[2] Infante

---

[1]    The Court of Criminal Appeals observed:

> [T]he legal ruling of whether a statement is testimonial under *Crawford* is determined by the standard of an objectively reasonable declarant standing in the shoes of the actual declarant. On that question trial judges are no better equipped than are appellate judges, and the ruling itself does not depend upon demeanor, credibility, or other criteria peculiar to personal observation.

*Wall*, 184 S.W.3d at 742–43.

[2]    Although LeJeune did not personally obtain the radio's serial number, his testimony connected the relevant business records to the specific radio in evidence at trial through his personal knowledge of, and involvement in, the investigation of the radio in the radio shop.

9

made a hearsay objection to the admission of both LeJeune's testimony as to the radio's serial number and the records containing the serial number.

But business records filed pursuant to rule 803(6) of the Texas Rules of Evidence are excepted from the hearsay rule. *See* TEX. R. EVID. 803(6); *see also Campos v. State*, 317 S.W.3d 768, 777–78 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). Infante does not argue that the radio shop's business records do not satisfy the criteria of rule 803(6), and the records are not deficient on their face.[3] Documents that comply with the specified categories of rule 803 are admissible without regard to whether the declarant is available to testify. TEX. R. EVID. 803 ("The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . .").

---

[3] Rule 803(6) provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. "Business" as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Tex. R. Evid. 803(6).

In the absence of any challenge to the sufficiency of the State's business records affidavit, we cannot hold that the trial court abused its discretion in admitting the radio shop's business records containing the recovered radio's serial number, over Infante's hearsay objection. Although Infante objected that LeJeune did not have any personal knowledge of the radio's serial number, "[r]ule 803(6) does not require that the person authenticating the record be either the creator of the record or to have personal knowledge of the information recorded therein." *Campos*, 317 S.W.3d at 777–78 (quoting *Canseco v. State*, 199 S.W.3d 437, 440 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd)). "Rather, the testifying witness need only have knowledge of how the record was prepared." *Id.* at 778. Here, the affiant swears to such knowledge in the affidavit, and Infante has not contested this declaration.

Because the trial court did not abuse its discretion in admitting the business records containing the radio's serial number, LeJeune's testimony as to the radio's serial number was duplicative of properly admitted evidence. Even assuming that LeJeune's testimony as to the radio's serial number constituted inadmissible hearsay, any error in admitting the testimony did not harm Infante. *See, e.g.*, *Greene v. State*, 287 S.W.3d 277, 285 (Tex. App.—Eastland 2009, pet. ref'd) (holding that admission of witness's testimony was not harmful because testimony was duplicative of defendant's statement on same matter); *Land v. State*, 291

11

S.W.3d 23, 28 (Tex. App.—Texarkana 2009, pet. ref'd) (holding admission of hearsay evidence was not harmful because it was cumulative of other, properly admitted evidence); *Smith v. State*, 236 S.W.3d 282, 300 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (holding that the erroneous admission of hearsay was harmless because the same information was properly in evidence through another source). "The admission of inadmissible evidence becomes harmless error if other evidence proving the same fact is properly admitted elsewhere[.]" *Land*, 291 S.W.3d at 28 (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999), *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986), and *Sanchez v. State*, 269 S.W.3d 169, 172 (Tex. App.—Amarillo 2008, pet. ref'd)).

The erroneous admission of a hearsay statement constitutes non-constitutional error that is subject to a harm analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *Campos*, 317 S.W.3d at 779 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Land*, 291 S.W.3d at 28. Under Rule 44.2, "[a]ny [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). Because the admission of LeJeune's testimony as to the radio's serial number did not harm Infante, we may not reverse the trial court's judgment on that basis, even if that testimony constituted

inadmissible hearsay. *See* TEX. R. APP. P. 44.2(b); *Campos*, 317 S.W.3d at 779; *Land*, 291 S.W.3d at 28.

## C.     Confrontation Clause

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides that "'in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.'" U.S. Const. amend. VI. The Confrontation Clause does not apply to all out-of-court statements introduced at a trial; it applies only to hearsay that is "testimonial" in nature. *Sanchez v. State*, 354 S.W.3d 476, 485 (Tex. Crim. App. 2011) (citing *Crawford v. Washington*, 541 U.S. 36, 51–52, 124 S. Ct. 1354, 1364 (2004)). The Confrontation Clause prohibits trial courts from admitting testimonial statements of a witness who is absent from trial unless the witness is unable to testify and the defendant had a proper opportunity to cross-examine the witness. *See id.*; *McWilliams v. State*, 367 S.W.3d 817, 819 (Tex. App.—Houston [14th Dist.] 2012, no. pet.). But the Confrontation Clause does not bar the admission of non-testimonial statements. *Sanchez*, 354 S.W.3d at 485. "'An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the . . . abuses the Confrontation Clause targeted.'" *Id.* (quoting *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364).

"While the exact contours of what is and is not testimonial continue[] to be defined by courts, it generally may be said that testimonial statements tend to appear more formal and more similar to trial testimony than non-testimonial statements." *Sanchez*, 354 S.W.3d at 485. The United States Supreme Court has identified a "core class of 'testimonial' statements":

- *ex parte* in-court testimony or its functional equivalent "such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially";

- extrajudicial statements "contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and

- "statements that were made under circumstance which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

*Crawford*, 541 U.S. at 51–52, 124 S. Ct. at 1364.

Typically, documents filed in compliance with the public-records or business-records exceptions to the hearsay rule are non-testimonial. *See Crawford*, 541 U.S. at 56, 124 S. Ct. at 1367 ("Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy."); *Azeez v. State*, 203 S.W.3d 456, 466 (Tex. App.—Houston [14th Dist.] 2006), *rev'd on other grounds,* 248 S.W.3d 182 (Tex. Crim. App. 2008) ("Generally, business records are non-testimonial."). This is because business and public records were "created for the administration of

14

an entity's affairs and not for the purpose of establishing or proving some fact at trial." *Bullcoming v. New Mexico*, __ U.S. __, __ n.6, 131 S. Ct. 2705, 2714 n.6 (2011) (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539–40 (2009)). But business or public records may be testimonial; for example, business records are testimonial if they contain a "factual description of specific observations or events that is akin to testimony," *Segundo v. State*, 270 S.W.3d 79, 106–07 (Tex. Crim. App. 2008),[4] or if the business entity's "regularly conducted business activity is the production of evidence for use at trial," *Melendez-Diaz*, 557 U.S. at 321–24, 129 S. Ct. at 2538.

In 2009, the U.S. Supreme Court held that certificates signed by state laboratory analysts, which stated that evidence connected to the defendant was cocaine, were testimonial hearsay and their admission violated the defendant's Sixth Amendment right to confront the analysts who signed the certificates. *Melendez-Diaz*, 557 U.S. at 310, 129 S. Ct. at 2532. The Court concluded that the certificates were "incontrovertibly a 'solemn declaration or affirmation made for

---

[4] The *Segundo* court held that Board of Pardons and Paroles certificates stating that defendant "subsequently failed to fulfill the terms and conditions of said release, and is therefore not worthy of the trust and confidence placed therein," had "violated the conditions of administrative release," and was an "administrative release violator" were not testimonial. 270 S.W.3d at 106–07 (distinguishing holding in *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005) that portions of jail records "containing specific incident reports written by corrections officers graphically documenting their detailed observations" of defendant's disciplinary offenses were testimonial).

the purpose of establishing or proving some fact[,]'" specifically, "that the substance found in the possession of Melendez–Diaz and his codefendants was, as the prosecution claimed, cocaine[.]" *Id.* at 311, 129 S. Ct. at 2532.

Applying *Melendez-Diaz*, Texas courts have generally held that an expert witness who testifies as to his own opinions, drawn from his own research and analysis, may rely on data supplied by scientific instruments operated by other scientists or technicians. *See Hamilton v. State*, 300 S.W.3d 14, 21–22 (Tex. App.—San Antonio 2009, pet. ref'd) (holding that testifying expert could testify as to his opinion, "based on data generated by scientific instruments operated by other scientists" without violating the Confrontation Clause); *Paredes v. State*, No. 14-10-00266-CR, 2011 WL 3667839, at \*10 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, pet. filed) (not designated for publication) (holding that witness could offer expert opinion when she "personally compiled the DNA data supplied by non-testifying analysts, interpreted it, and performed the comparative analysis" and stating that "[a]n expert witness who offers her opinion based in part on lab work performed by another does not violate the Confrontation Clause.").

Two years after *Melendez-Diaz*, the Supreme Court held that the Confrontation Clause prohibited introduction of a forensic laboratory report containing a testimonial certification through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the

16

certification. *Bullcoming v. New Mexico*, — U.S. —, —, 131 S. Ct. 2705, 2710 (2011). The state supreme court had held that a testifying analyst could rely on another analyst's blood alcohol test results because the analyst who performed the test acted as a "mere scrivener" who "transcrib[ed] results generated by the gas chromatograph machine." *Id.* at —, 131 S. Ct. at 2712, 2715. The Supreme Court disagreed, stating that the other analyst did more than report a machine-generated number—he certified that he received the defendant's blood sample with the seal unbroken, checked to make sure the report number and sample number corresponded, and performed the blood alcohol test according to protocol. *Id.* at 2714. These representations, the Court concluded, "relat[ed] to past events and human actions not revealed in raw, machine-produced data," and, as such, were subject to the right of confrontation. *Id.*

Most recently, the Supreme Court addressed the admission of underlying DNA test results performed by a non-testifying witness. *Williams v. Illinois*, — U.S. —,132 S. Ct. 2221 (2012). Observing that "[m]odern rules of evidence continue to permit experts to express opinions based on facts about which they lack personal knowledge," the Court held that there was no Confrontation Clause violation when an expert witness relied on a DNA profile procured from a third-party laboratory, Cellmark, which had performed the DNA testing before a suspect was identified in the criminal investigation. *Id.* at —, 132 S. Ct. at 2227–28, 2234.

17

The expert testified as to the following: Cellmark was an accredited lab; the Illinois state police lab occasionally sent forensic samples to Cellmark for DNA testing; the police lab sent vaginal swabs taken from the victim to Cellmark and later received those swabs back from Cellmark; and the Cellmark DNA profile matched a profile produced by the police lab from a sample of the defendant's blood. Because the witness had personal knowledge of each of these matters, the Court held that her testimony did not violate the Confrontation Clause. *Id.* at 2227–29. The Court further held that, had Cellmark's DNA report been introduced into evidence, it likewise would not have violated the Confrontation Clause because it was not created for the primary purpose of obtaining evidence to use against the defendant; rather, it was created "for the purpose of finding a rapist who was on the loose." *Id.* at —, 132 S. Ct. at 2228.

In light of this precedent, we conclude that LeJeune's testimony regarding the results he found in his personal research based on the serial number acquired by a technician did not violate Infante's Sixth Amendment right of confrontation for three reasons. First, the serial number is exactly the kind of "raw, machine-produced data" that the Supreme Court said was not at issue in *Bullcoming*, — U.S. at —, 131 S. Ct. at 2714. LeJeune testified that the radio shop technician obtained the serial number by plugging his programming cables up to the radio, reading the serial number produced, and reporting that number to LeJeune. The

18

technician's out-of-court statement is only the recording of the serial number produced by the radio—he performed no analysis, made no representations as to his own personal observations or opinion, and did not attest to the accuracy of the number produced by the radio or the means by which it was obtained.

Second, the record does not establish that the serial number was obtained for the primary purpose of generating evidence to use against Infante. *See Williams*, — U.S. at —, 132 S. Ct. at 2243 (holding report that was "not prepared for the primary purpose of accusing a targeted individual" did not invoke Confrontation Clause). LeJeune testified that he asked the technician to pull the radio's serial number after Corporal Quirin brought LeJeune the radio and asked Lejeune if he could tell him anything about the radio. Additionally, the radio shop's records indicated that the radio had been flagged when it went missing in 2008 such that if a radio with that serial and tracking number came into the shop, it was to be reported to various officials. Moreover, in light of the bench technician's isolated task of reading and reporting the serial number, "it is likely that the sole purpose of [the] technician [was] simply to perform his or her task in accordance with accepted procedures." *Id.* at 2244. The technician likely had "no idea" what the consequences of his report would be, and the data LeJeune uncovered from the shop's records using the serial number could have tended to exonerate, rather than incriminate, Infante. *See Id.* (noting that DNA technicians "often have no idea what

the consequences of their work will be" and "have no way of knowing whether [the DNA evidence] will turn out to be incriminating or exonerating—or both.").

Finally, the lab technician's identification of the radio's serial number is similar to the chain-of-custody link discussed in *Melendez–Diaz*:

> [W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case. While the dissent is correct that "it is the obligation of the prosecution to establish the chain of custody," . . . this does not mean that everyone who laid hands on the evidence must be called. As stated in the dissent's own quotation . . . "gaps in the chain [of custody] normally go to the weight of the evidence rather than its admissibility." . . . Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.

*Melendez–Diaz*, — U.S. at —, 129 S. Ct. at 2532 n.1 (citations omitted). The role of the radio's serial number here was to connect the data collected by LeJeune from the radio shop's records to the radio in evidence at trial, which LeJeune testified is the same radio presented to him, from which he asked the technician to pull the serial number. LeJeune testified from personal knowledge to establish that the radio in evidence was the same radio the technician used to obtain the serial number. The possibility that the technician could have misread the serial number or that the machine could have malfunctioned in producing the serial number goes to the weight of LeJeune's testimony, not its admissibility. *See id.*; *see also Evanoff v. State*, No. 11-09-00317-CR, 2011 WL 1431520, at *11 (Tex. App.—Eastland

20

April 14, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that laboratory submission form linking substance seized and substance tested were not testimonial under Confrontation Clause but, instead, "merely went to establishing chain of custody").

Under these circumstances, we hold that the trial court's admission of the radio's serial number did not violate Infante's Sixth Amendment right of confrontation.

We overrule Infante's second issue.

### Accomplice-Witness Instruction

In her third issue, Infante asserts that the trial court erred in refusing her request to submit an accomplice-witness instruction in the jury charge with respect to Billy Cable, Infante's supervisor at her second job, who had possession of the radio at the time of his unrelated arrest and who told police that he purchased the radio from Infante.

### A.   Standard of review

If the evidence at trial raises a question of fact as to whether a witness is an accomplice, the trial court must instruct the jury to decide whether the witness is an accomplice; if the evidence conclusively establishes that a witness is an accomplice, the trial court must instruct the jury that the witness is an accomplice as a matter of law. *Druery v. State*, 225 S.W.3d 491, 498–99 (Tex. Crim. App.

2007). We review a trial court's determination of whether the evidence supports an accomplice-witness instruction under an abuse of discretion standard. *See Paredes v. State*, 129 S.W.3d 530, 536–37 (Tex. Crim. App. 2004).

## B.     Accomplice–witness instruction

Under article 38.14 of the Code of Criminal Procedure, a criminal conviction may not be based on the testimony of an accomplice-witness unless the testimony is "corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2011). A witness is an accomplice only if he participates in the crime with the defendant, taking "an affirmative act . . . to assist in the commission of the [crime]" before, during, or after the commission of the crime, with the required culpable mental state for the crime. *Druery*, 225 S.W.3d at 498–99; *see also Paredes*, 129 S.W.3d at 536. Mere presence at the scene of the crime does not render a witness an accomplice. *Druery*, 225 S.W.3d at 498; *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). Nor is a witness an accomplice merely because he knew of the crime and failed to disclose it or even concealed it. *Druery*, 225 S.W.3d at 498. In short, "[i]f the witness cannot be prosecuted for the same offense with which the defendant is charged, or a lesser-included offense, the witness is not an accomplice witness as a matter of law." *Delacerda v. State*, No. 01–09–00972–CR, 2011 WL 2931189, at *22 (Tex. App.—Houston [1st Dist.] July 21, 2011, no pet.).

22

Infante was not entitled to an accomplice-witness instruction with respect to Cable because there was no evidence that Cable took an affirmative act to assist Infante in the commission of theft of the radio. *Druery*, 225 S.W.3d at 498–99; *see also Paredes*, 129 S.W.3d at 536. While there was evidence that Cable purchased the stolen radio from Infante, merely possessing or purchasing stolen property does not, alone, establish affirmative assistance in the commission of the theft. *See Cocke*, 201 S.W.3d at 748 (holding that defendant was not entitled to accomplice-witness instruction with respect to two witnesses who purchased or received stolen property from defendant when there was no evidence they actively participated or assisted in burglary or had required mental state); *see also Charles v. State*, No. 14-01-00802-CR, 2002 WL 1733672, at *2–3 (Tex. App.—Houston [14th Dist.] July 25, 2002, pet. ref'd) (not designated for publication) (holding that trial court did not err in failing to submit accomplice-witness instruction with respect to witness who had possession of stolen items and noting that "[u]nder the current Penal Code, a witness whose participation in a crime occurred only after the commission of the offense, namely a person who would be considered an accessory after the fact (a receiver of stolen goods) under the prior law, is no longer an accomplice witness.") (citing *Easter v. State*, 536 S.W.2d 223, 228 (Tex. Crim. App. 1976); *Worthen v. State*, 59 S.W.3d 817, 820 (Tex. App.—Austin 2001, no pet.)).

Moreover, Cable testified that he did not know the radio was stolen, and Infante identifies no controverting evidence tending to establish that Cable had the necessary mental state to support a theft conviction. *See Cocke*, 201 S.W.3d at 748 ("This Court has previously held that proof that a witness purchased stolen property will not transform his testimony into that of an accomplice when there is no evidence of facts that would put the witness on notice that the property was stolen.") (citing *Peaden v. State,* 491 S.W.2d 136, 139 (Tex. Crim. App.1973)). Under these circumstances, the trial court did not abuse its discretion in refusing to submit an accomplice witness instruction with respect to Cable.

We overrule Infante's third issue.

### Conclusion

We hold that the evidence was sufficient to prove the "value" element of Infante's theft, that the trial court did not commit reversible error in admitting the recovered radio's serial number into evidence, and that the trial court did not abuse its discretion in declining to submit an accomplice witness instruction with regard to Billy Cable. We therefore affirm the trial court's judgment.

Harvey Brown
Justice

Panel consists of Justices Keyes, Massengale and Brown.

Publish.  TEX. R. APP. P. 47.2(b).

24