

# NUMBER 13-24-00652-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ENRIQUE AYALA HERNANDEZ,**                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                               **Appellee.**

---

## ON APPEAL FROM THE 36TH DISTRICT COURT
## OF SAN PATRICIO COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Cron and Fonseca**
**Memorandum Opinion by Justice Fonseca**

Appellant Enrique Ayala Hernandez challenges his convictions for murder, a first-degree felony (Count 1), and tampering with physical evidence to impair an investigation involving a human corpse, a second-degree felony (Count 4). *See* TEX. PENAL CODE §§ 19.02(b), (c), 37.09(d)(1), (c). Hernandez's punishment range was enhanced due to a prior felony conviction, and the trial court sentenced him to life imprisonment as to Count

1 and twenty years' imprisonment as to Count 4, to run concurrently. By three issues, Hernandez argues that (1)–(2) the evidence is insufficient to support his convictions, and (3) the trial court erred when it admitted a 911 call.

Because the indictment and jury charge instructions for Count 4 alleged a misdemeanor tampering offense under section 37.09(d)(2) instead of a felony tampering offense under section 37.09(d)(1), and because the trial court lacked jurisdiction over the misdemeanor, we reverse the judgment of conviction as to Count 4 and render judgment dismissing that count for want of jurisdiction. We affirm the trial court's judgment in all other respects.

## I. BACKGROUND

The State indicted Hernandez for the murder of Michael Espinosa[1] and for three counts of tampering with physical evidence (Counts 2 through 4). The State later dismissed Counts 2 and 3.

The following facts were established at trial. On December 22, 2021, San Patricio County Sheriff's Office (SPCSO) Deputy Matthew Ponder, responded to a call for a possible shooting. Ponder was dispatched to 716 South Perez in Mathis. Upon arrival, Ponder encountered Jesus Bueno or "Jay." Ponder testified that Bueno seemed "chaotic" and appeared to be under the influence of alcohol or drugs. Ponder explained that because Bueno was acting erratically, Ponder initially "wasn't quite sure" if a crime had been committed. However, when Hernandez arrived on scene about half an hour later, Bueno was "scared sober" by Hernandez's presence. Ponder testified, "Once I saw that reaction I knew that we had something, and so I made contact with other officers and said

---

[1] Espinosa's name also appears as "Espinoza" in the record.

we need to take this a little bit more seriously because it's actually a legitimate call." After speaking with other subjects at the scene, officers retrieved "a .22 long rifle" that Bueno "had placed inside the [South Perez] house," as well as "some .22 bullets that [Bueno] had in his pocket." Forensic analysis later excluded the rifle as the possible murder weapon. Ponder testified that Hernandez and Bueno were taken into custody at that time.

Emma Burleson, an SPCSO investigator, authenticated Bueno's 911 call. Burleson testified that the 911 call contained her voice—because she was working in dispatch when the call was made—, the dispatcher's voice, and Bueno's voice. The 911 call was admitted into evidence and played for the jury. In the call, Bueno tells the operator multiple times to "hurry up" because "it's an emergency." The 911 operator repeatedly asks what the emergency is and asks Bueno to provide more details. Bueno eventually tells her that his name is "Jay," "someone got shot," and "Ricky f[***]ed up. He shot a dude in the head." Later testimony revealed that Hernandez goes by the nickname "Ricky." Burleson then traveled to the scene and arrived after Deputy Ponder. When she arrived, she noticed that Bueno looked "very scared." She testified that "[h]e was very intoxicated. He was slurring his speech a lot, . . . shaking a lot, just not—not in his right mind for sure."

Ricardo Ayala, Hernandez's uncle, lived at 716 South Perez. Ayala testified that on the day in question, he woke up to the sound of "a car peeling out." He opened the door and saw "a little bit of th[e] car" and saw Bueno go to "the side of [his] house with a rifle" and place the rifle inside the house. On recross, Ayala clarified that it looked as if the vehicle "was dropping off" Bueno. Ayala did not see what the car looked like or where it came from. The State later called Bueno as a witness, and Bueno invoked his Fifth Amendment right to silence.

3

Christopher Rodriguez, Hernandez's cousin who lives on County Road 362 in Sandia, testified that on the night in question, "somebody drove by [his house] pretty fast," so he grabbed his pistol and "spotlight" to investigate. Rodriguez explained that County Road 362 is generally "kind of slow, dead," and has a dead end that abuts the Nueces River. He explained that the road by his house is shaped like a "J" and the end of the curve splits into a "T." Rodriguez drove down the road and both ends of the "T." Not finding a car, Rodriguez started driving back. On the way up the "J," Rodriguez saw Hernandez walking on the side of the road. Rodriguez offered Hernandez a ride to his mom's house, and he accepted the offer, but Rodriguez did not take Hernandez all the way. Rodriguez stated he let Hernandez out of the car when Hernandez "said something that I felt uncomfortable with and [I] told him I didn't want [any]thing to do with it."[2]

Officers found Espinosa's body in a 2010 silver Camaro hanging on the edge of the riverbank off County Road 362. An autopsy revealed that his cause of death was a gunshot wound to the head and multiple stab wounds. The autopsy indicated that Espinosa was stabbed about nineteen times, and it could not be determined whether the gunshot or stabbing occurred first. Espinosa's body was tested for alcohol and controlled substances, and the tests came back positive for alcohol, methamphetamine, and amphetamine.

Forensic investigator Lisa Baylor testified that once the car was towed off the ledge, she observed Espinosa's body on the driver's side, "rolled over on top of the console." Baylor took swabs for DNA analysis from many different areas of the vehicle, but most of the swabs did not have enough DNA to substantiate a result. There were also

---

[2] Rodriguez proceeded to explain what Hernandez told him, and defense counsel objected. The trial court sustained the objection and struck Rodriguez's explanation of what Hernandez told him.

no usable fingerprints on the vehicle. Baylor collected additional swabs from "a red knife from the driver-side floorboard," an apparent blood stain on Hernandez's boxers from the night of his arrest, and blue coveralls recovered from the road near the vehicle later in the investigation. She also collected a machete found wedged in the area between the driver's seat and the console but did not take any DNA swabs. The red knife was later determined by investigators to be the source of Espinosa's stab wounds.

Other forensic scientists testified as to the results of the DNA samples collected from the knife, coveralls, and Hernandez's underwear. Hernandez and Bueno were excluded as contributors to the DNA on the knife. Blood stains on the coveralls were positive with Espinosa's DNA and an unknown independent contributor; Hernandez and Bueno were ruled out. However, Espinosa and Hernandez were identified as potential contributors to the DNA samples from the neckline and the wrists of the coveralls, and Bueno was excluded as a contributor. Finally, Hernandez, Bueno, and Espinosa were all identified as potential contributors to DNA obtained from blood stain on Hernandez's underwear.

The jury was instructed to convict Hernandez of murder if it found that Hernandez was the primary actor or a party to the offense. The jury convicted Hernandez and assessed punishment as outlined above, and the trial court sentenced him in accordance with the jury's verdict. This appeal ensued.

## II.    SUFFICIENCY OF THE EVIDENCE

By his first two issues, appellant argues that the evidence was legally insufficient to support his convictions.

5

**A.      Standard of Review & Applicable Law**

In reviewing the sufficiency of the evidence to support a conviction, "we consider the evidence in the light most favorable to the verdict" and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (quoting *Jackson*, 443 U.S. at 319).

"The sufficiency of the evidence is measured by comparing the evidence produced at trial to 'the essential elements of the offense as defined by the hypothetically correct jury charge.'" *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "A hypothetically correct jury charge 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

A person commits murder if he intentionally or knowingly causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1).[3] Under the law of parties, "[a] person is

---

[3] "Intentional" and "knowing" conduct are defined in the penal code as:

(a)      A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b)      A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the

criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with the intent to promote or assist the commission of the offense, he [or she] solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

**B.    Murder**

Hernandez first argues that the evidence is insufficient to prove that the murder occurred in San Patricio County as alleged in the indictment. However, "venue is not an element of the offense under Texas law," and failure to prove venue does not implicate sufficiency of the evidence. *Schmutz v. State*, 440 S.W.3d 29, 34–35 (Tex. Crim. App. 2014). Instead, if the State fails to prove its venue allegation, we consider whether appellant's substantial rights were affected under Texas Rule of Appellate Procedure 44.2(b). *Id.* at 39.

Assuming without deciding that the State failed to prove that the murder occurred in San Patricio County, Hernandez makes no argument that the alleged venue error affected his substantial rights, and nothing in the record indicates that he was prejudiced or inconvenienced by the trial occurring in San Patricio County instead of Jim Wells County. *See* TEX. R. APP. P. 44.2(b); *Schmutz*, 440 S.W.3d at 39 (noting failure to prove venue is treated as non-constitutional error and analyzed under Rule 44.2(b)); *see also*

---

nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

TEX. PENAL CODE § 6.03(a), (b).

7

*Freese v. State*, No. 03-24-00254-CR, 2025 WL 1535376, at *6 (Tex. App.—Austin May 30, 2025, pet. ref'd) (mem. op., not designated for publication) (holding that, even if venue was improper, appellant's substantial rights were not affected because "venue controlled only the geographic location where the case was to be tried," appellant was not "physically inconvenienced or harmed by witness unavailability," nor was there any evidence of forum shopping). We overrule this sub-issue.

Hernandez next argues that the evidence was insufficient to support his conviction for murder as a primary actor because the 911 call was "unreliable," and the DNA evidence was too weak to link Hernandez to the scene of the crime. However, we must defer to the jury's determinations about credibility and the weight to be given to the evidence. *See Edward*, 635 S.W.3d at 655. The jury was presented with the following evidence: Bueno's 911 call in which Bueno states that Hernandez "shot a dude in the head"; Rodriguez's testimony that Hernandez was walking at night on the street near where Espinosa's body was later discovered; Hernandez's and Espinosa's DNA on discarded, blood-stained coveralls near where Espinosa's body was found; and blood on Hernandez's underwear containing DNA from him, Espinosa, and Bueno. From this record, the jury could have rationally concluded beyond a reasonable doubt that Hernandez was the primary actor in Espinosa's murder. Because we hold that there is sufficient evidence that Hernandez was the primary actor, we need not address his remaining sufficiency argument on the law of parties. *See Johnson v. State*, 560 S.W.3d 224, 251 (Tex. Crim. App. 2018) (Walker, J., concurring) ("Because there is sufficient evidence to show that Appellant was guilty as a primary actor, we need not delve into

8

whether the evidence is also sufficient to show he was guilty as a party."). We overrule

Hernandez's first issue.

## C.    Tampering with Physical Evidence

Hernandez next contends that the evidence is insufficient as to Count 4 because

it does not support felony tampering under section 37.09(d)(1). Specifically, he argues

"there was no evidence to show . . . he was aware that an investigation was pending,"

and that "he did not destroy, or conceal the evidence." *See* TEX. PENAL CODE

§ 37.09(d)(1). Hernandez notes that the language of the indictment "tracks the statute for

a misdemeanor under §[ ]37.09(d)(2), not felony tampering under §[ ]37.09(d)(1)." The

State "concedes error and asks that this count be remanded for dismissal."

A person commits tampering with or fabricating physical evidence if the person:

(1)    knowing that an offense has been committed, alters, destroys, or
conceals any record, document, or thing with intent to impair its
verity, legibility, or availability as evidence in any subsequent
investigation of or official proceeding related to the offense; or

(2)    observes a human corpse under circumstances in which a
reasonable person would believe that an offense had been
committed, knows or reasonably should know that a law enforcement
agency is not aware of the existence of or location of the corpse, and
fails to report the existence of and location of the corpse to a law
enforcement agency.

TEX. PENAL CODE § 37.09(d). If "the thing altered, destroyed, or concealed is a human

corpse," an offense under subsection (d)(1) is a second-degree felony. *Id.* § 37.09(c). An

offense under subsection (d)(2) is a Class A misdemeanor. *Id.*

The indictment for Count 4 alleged that Hernandez

did then and there, observe a human corpse under the circumstances in
which a reasonable person would have believed that an offense had been
committed, . . . and [Hernandez] did know or reasonably should have
known that a law enforcement agency was not aware of the existence of or

9

> location of the corpse, and [Hernandez] did fail to report the existence of
> and location of the corpse to a law enforcement agency . . . .

Accordingly, we agree with the parties that the indictment alleged a misdemeanor offense under section 37.09(d)(2) instead of second-degree felony tampering under section 37.09(d)(1). *See id.* § 37.09(d).

The State concedes that "[u]nder existing case law of *Delarosa v. State*, the State charged a complete offense that the court has no jurisdiction over." *See* TEX. CONST. art. V, § 8 ("Jurisdiction of District Courts"); TEX. CODE CRIM. PROC. art. 4.05 ("District courts and criminal district courts shall have original jurisdiction in criminal cases of the grade of felony, of all misdemeanors involving official misconduct, and of misdemeanor cases transferred to the district court under Article 4.17 of this code."). Accordingly, we reverse the judgment of conviction as to Count 4 and render a judgment dismissing that count for want of jurisdiction. *See Delarosa v. State*, 677 S.W.3d 668, 676–77, 680 (Tex. Crim. App. 2023) (holding that the State was required to prove the felony offense alleged in the indictment, even though the State intended to charge the defendant with a different felony, and reversing and rendering acquittal where there was insufficient evidence of the offense as alleged in the indictment); *see also* TEX. R. APP. P. 43.2 (providing that the courts of appeals may "reverse the trial court's judgment in whole or in part and render the judgment that the trial court should have rendered"). We sustain Hernandez's second issue.

### III.    ADMISSIBILITY OF THE 911 CALL

Hernandez lastly argues by his third issue that the trial court erred under the Confrontation Clause of the Sixth Amendment when it admitted the 911 call because Bueno's statements were testimonial, and Bueno was unavailable to be cross-examined

at trial. However, when the State moved for admission of the 911 call, Hernandez's defense counsel merely objected because the call was "hearsay."[4] "Hearsay and the right to confrontation 'are distinct objections' that raise different legal questions." *Rojas-Antonio v. State*, 719 S.W.3d 422, 431 (Tex. App.—Corpus Christi–Edinburg 2025, no pet.) (quoting *Ford v. State*, 179 S.W.3d 203, 207 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)). "They are also 'governed by different standards of review.'" *Id.* (quoting *Infante v. State*, 404 S.W.3d 656, 662 (Tex. App.—Houston [1st Dist.] 2012, no pet.)). "Naturally, this means that a general hearsay objection does not preserve error on Confrontation Clause grounds." *Id.* at 431–32 (citation modified); *see Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005).

We hold that Hernandez failed to preserve this issue for appeal. *See Rojas-Antonio*, 719 S.W.3d at 432 (holding that the appellant waived his Confrontation Clause argument on appeal because "appellant did not expressly or implicitly raise a Confrontation Clause objection in the trial court"); *see also Golliday v. State*, 560 S.W.3d 664, 671 (Tex. Crim. App. 2018) ("[G]eneral arguments about hearsay do not put the trial judge on notice that Appellant is making a constitutional argument, let alone a Confrontation Clause argument."); *Ruth v. State*, 167 S.W.3d 560, 567 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd) ("It is well established that a hearsay objection does not preserve a Confrontation Clause argument for appeal."). Hernandez's third issue is overruled for this reason. *See* Tex. R. App. P. 33.1(a)(1).

---

[4] Specifically, defense counsel stated, "[W]e're going to object on the grounds of hearsay, Judge."

11

## IV.  CONCLUSION

We reverse Hernandez's conviction on Count 4, felony tampering with physical evidence, and render a judgment dismissing that count for want of jurisdiction. The trial court's judgment is affirmed in all other respects.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
28th day of May, 2026.