

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-09-00034-CR
_____

### CHARLES DOUGLAS LAND, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the 102nd Judicial District Court
Bowie County, Texas
Trial Court No. 08F0035-102

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# O P I N I O N

Charles Douglas Land, fifty-two years of age, was found at a motel in the Pacific northwest with a fifteen-year-old girl, A.N., after a notorious, multi-state flight that began in Bowie County, Texas. Land was convicted by a jury of sexual assault of a child, and his sentence was enhanced using two prior felony convictions in California. The jury assessed Land's punishment at seventy-five years' imprisonment.

Land contends that the trial court's admission of a videotaped interview with A.N. violated his right to confrontation of A.N. under the Federal and State Constitutions and that the interview is inadmissible hearsay. He also argues that there is factually insufficient evidence to prove that sexual intercourse occurred between Land and A.N. in Bowie County, Texas, or during the time period alleged in the indictment. We modify the judgment of the trial court, and affirm it as modified, because of five holdings set out below: (1) factually sufficient evidence supports the judgment; (2) admitting the recorded interview did not abridge the right of confrontation; (3) admitting the recorded hearsay interview was error; (4) admitting the recorded hearsay interview was, however, harmless; and (5) the judgment must be modified to reflect the correct degree of offense.

2

*1.    Factually Sufficient Evidence Supports the Judgment*

Land argues that the evidence is factually insufficient to show that he engaged in sexual intercourse with A.N. in Bowie County, Texas, within the time parameters of the charge. We disagree.

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In this analysis, we use a hypothetically correct jury charge to evaluate the sufficiency of evidence. *Grotti v. State*, 273 S.W.3d 273 (Tex. Crim. App. 2008). Here, because Land challenges the sufficiency of the evidence only with regard to proving that Land and A.N. had sexual intercourse in Bowie County and that it occurred during the time parameters set out in the charge, we do not set out all elements of the hypothetically correct jury charge; we address only those elements challenged by Land.

*Proof of Location.* Land acknowledges that there is sufficient evidence of sexual intercourse occurring in other states, but argues that, because A.N.'s testimony was self-contradictory, there is insufficient evidence to show that they had intercourse in Bowie County as alleged by the indictment. The core of A.N.'s trial testimony was relatively brief:

> Q.   Prior to leaving Bowie County in that pickup [to travel out of state], did Charles Land and yourself engage in sex?

3

A.   Yes.

Q.   And was that at your house in Bowie County?

A.   No.

Q.   Okay.  Did you have sex twice at your house, once on the couch and once on the bed?

A.   Yes.

Q.   Okay, did you have sex in the bus where Charles lived?

A.   Yes.

Counsel points out that vehicles are inherently movable and argues that, because there is no evidence that the bus was located in Bowie County at the relevant point, this cannot constitute evidence of sexual acts in Bowie County.  Counsel also points out, correctly, that Texas district courts have jurisdiction only to try a defendant for criminal acts committed in this state.  *Ex parte Watson*, 601 S.W.2d 350, 352 (Tex. Crim. App. 1980).

We disagree with counsel, however, about the import of the evidence cited.  A.N. testified that she had had sex with Land before leaving Bowie County.  She did testify initially that "that" was not at her house in Bowie County,[1] but then in the next breath said that she did have sex with him

---

[1]A.N.'s apparent initial denial of having sex with Land in her house could have been based on a misunderstanding of the question.  The jury could have discounted it as an erroneous answer or interpreted it as something other than a flat denial that they had had sex in her house, even considering just A.N.'s testimony.  By way of further explanation, in the recorded interview, A.N. told of numerous instances of sexual intercourse with Land in his residence, a bus, which was adjacent to her home.  Officer Dirk Anderson quoted A.N. as saying that she and Land had sex a large number of times over the six months before officers picked them up in the Pacific northwest.

in her house on two occasions. This is evidence that the act took place in Bowie County. Her testimony that they had sex in Land's bus/residence is also evidence of sexual intercourse between the two in Bowie County, as we note that there is nothing in the record to indicate that the bus was even capable of being moved. In fact, the evidence was only that the bus was used as his residence and that it was located in Bowie County adjacent to A.N.'s house. Thus, the context indicates that the sex in the bus was in Bowie County. The evidence is factually sufficient to allow the jury to determine that the charged act occurred in Bowie County.

*Proof of Time Period.* Land also argues that the evidence is factually insufficient to show that sexual intercourse occurred at or near the time period alleged in the indictment. The amended indictment alleged that the offense occurred "on or about May 15, 2007." Counsel directs us to testimony from A.N.'s mother that Land had come to Texas about two months before he and A.N. left in late June, and points out that A.N. was entirely unable to testify at trial to even guess at the time frame during which they had sex. He adds that the forensic interviewer testified that A.N. told her that her first sexual intercourse with Land was about seven months before leaving with him. Counsel suggests impossibility.

---

All but ten days to two weeks of that happened before they left Bowie County, Texas. A.N. was consistent in saying that she had sex with Land twice in her home. The jury could reasonably have concluded that her initial answer was intended to communicate that the sexual intercourse usually happened in Land's residence (bus) next door or that intercourse that happened just before they left was in the bus.

There is clear testimony that Land and A.N. had sex in Bowie County, Texas, before leaving in late June. Other testimony indicated sexual intercourse was ongoing for approximately six months before A.N. and Land were found by officers in the Pacific northwest, and the vast majority of that time period would have been spent in Bowie County. At most, the evidence to which Land points provides contradictory dates for the beginning of the sexual relationship.

The State is not required to allege a specific date in an indictment. *Mitchell v. State*, 168 Tex. Crim. 606, 330 S.W.2d 459, 462 (1959). The "on or about" language is sufficient, so long as the act occurred before the date of the presentation of the indictment,[2] but within the relevant limitations period. *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Thomas v. State*, 753 S.W.2d 688, 693 (Tex. Crim. App. 1988). The evidence is sufficient to support the jury's determination on this matter.

2.      *Admitting the Recorded Interview Did Not Abridge the Right of Confrontation*

During guilt/innocence, the State introduced into evidence (over Land's two-pronged objection) a videotaped interview of A.N. A.N. later testified at trial. Counsel first argues that the admission of the recorded interview into evidence was constitutional error, and reversible as a confrontation violation under *Crawford*.[3] The admission of a hearsay statement made by a

---

[2]The original indictment was presented January 31, 2008.

[3]*Crawford v. Washington*, 541 U.S. 36 (2004).

nontestifying declarant violates the Sixth Amendment if the statement was testimonial when made and the defendant lacked a prior opportunity for cross-examination. *Crawford*, 541 U.S. 36.

On the other hand, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.*, at 59 n.9; *see California v. Green*, 399 U.S. 149, 162 (1970). As explained by the Court in *Crawford*, "the Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 512 U.S. at 59 n.9.

Under this authority, because A.N. testified at trial, there was no violation of the Federal Constitutional Confrontation Clause. *Miles v. State*, 259 S.W.3d 240, 252 (Tex. App.—Texarkana 2008, pet. ref'd).

Although counsel also directs our attention to Article I, Section 10 of the Texas Constitution, he does not suggest how that constitutional guarantee of the right of confrontation might be addressed any differently or with different emphasis than the federal right. *See* TEX. CONST. art. I, § 10. In the absence of a separate argument, we will not address that argument on its own. *Garcia v. State*, 919 S.W.2d 370 (Tex. Crim. App. 1996) (op. on reh'g); *McCambridge v. State*, 712 S.W.2d 499 (Tex. Crim. App. 1986).

There was no confrontation error.

*3.      Admitting the Recorded Hearsay Interview Was Error*

Land's trial objection to the admission of the recorded interview was also made on the basis of hearsay. He argues on appeal that the admission of that interview was harmful error.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute or by the Texas Rules of Evidence. TEX. R. EVID. 802; *Long v. State*, 800 S.W.2d 545, 547 (Tex. Crim. App. 1990).

The evidence consisted of an interview of A.N. by a child advocacy interviewer in which A.N. discussed her relationship with Land and the sex acts in which they had engaged. The interview meets the definition of hearsay. *See Dunn v. State*, 125 S.W.3d 610 (Tex. App.—Texarkana 2003, no pet.).

The State does not posit a theory under which the evidence could properly be admitted, and no exception to the hearsay rule appears to apply. The State simply argues that the admission of the evidence was harmless because A.N. testified to much the same effect when she later took the stand.

It appears that the hearsay objection got lost in its association with the simultaneous confrontation objection. The admission of this hearsay evidence was error.

*4.      Admitting the Recorded Hearsay Interview Was, However, Harmless*

As nonconstitutional error, we must review the erroneous admission under Rule 44.2 of the Texas Rules of Appellate Procedure and disregard the error unless it affects Land's substantial rights.

Tex. R. App. P. 44.2; *see* Tex. R. Evid 103(a); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). The admission of inadmissible evidence becomes harmless error if other evidence proving the same fact is properly admitted elsewhere (or comes in elsewhere without objection). *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Anderson v. State*, 717 S.W.2d 622, 627 (Tex. Crim. App. 1986); *Sanchez v. State*, 269 S.W.3d 169, 172 (Tex. App.—Amarillo 2008, pet. ref'd).

Our analysis of this case brings up many of the same problems that we addressed in *Dunn*. The facts of this case differ from those in *Dunn*. Evaluation of the improper evidence must be made in the context of the other evidence and the trial as a whole, and we should consider the impact of the various items of evidence and their length and emphasis. *See Josey v. State*, 97 S.W.3d 687, 698 (Tex. App.—Texarkana 2003, no pet.); *Moore v. State*, 82 S.W.3d 399, 406 (Tex. App.—Austin 2002, pet. ref'd), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571, 587 (Tex. Crim. App. 2008); *see also Ferguson v. State*, 97 S.W.3d 293, 298 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (affirming, noting properly admitted evidence was extremely strong).

In situations where a video recording is improperly admitted, yet the recording is cumulative of the victim's properly admitted live testimony on the same issue, courts often disregard the error, reasoning that it could not have affected the appellant's substantial rights. *Jensen v. State*, 66 S.W.3d 528, 537 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); *Matz v. State*, 21 S.W.3d 911, 912 (Tex. App.—Fort Worth 2000, pet. ref'd) (op. on remand). Redundancy from properly admitted or

9

nonchallenged evidence does not cure or moot the original error. It is, however, a consideration in our harm analysis. *See Matz v. State*, 14 S.W.3d 746 (Tex. Crim. App. 2000).

Here, the recorded interview is about fifty minutes long, most of which is either preliminary discussion or discussion about the out-of-state activities. About fifteen minutes of the interview dealt with the sexual relationship between Land and A.N. in Bowie County. In a thorough and systematic manner, the interviewer asked A.N. about the details of the sexual relationship,[4] including the number of times she and Land had sex, and where each act occurred and the circumstances surrounding that instance. From the interview, we learn that Land and A.N. had sex in Land's residence/bus and in A.N.'s own home. We also learn that they also had sex on the way to Washington State—sometimes in motels, sometimes in Land's pickup truck in Wal-Mart parking lots (where they spent the night when out of cash)—and in Land's friend's house once they arrived in Washington State. The great majority of A.N.'s utterances concerning sex with Land in Bowie County came in the form of the video recording played for the jury.

The recorded interview contained other information, not direct proof of the charge. At some point, A.N. said, she had sex with Land's twenty-six-year-old son at Land's suggestion. After that, she and Land became a sexually active couple, and matters moved on from there. A.N. also emphasized, on the recording, that she was the one responsible for them leaving together, that it was

---

[4]Developed during the interview of A.N., but admitted into evidence separately from the recorded interview, were two anatomical sketches demonstrating that A.N. knew the correct names and locations of the male and female sex organs.

her idea, and that she had selected the day and time for them to leave. She likewise emphasized that she was running away from home mainly because her mother was an alcoholic, and adding that she did not get along with her mother's new boyfriend. A.N. found her home life intolerable and was looking for an escape.

A.N.'s testimony at trial was presented after the recorded interview was played for the jury. Her live testimony was brief and to the point. Land's counsel indicates that her trial testimony was redundant with her recorded interview. We partially agree. Both do provide evidence that Land and A.N. engaged in sexual intercourse in Bowie County in the months leading up to the cross-country flight. In that sense, they are redundant. On the other hand, the interview is considerably longer and much more detailed than A.N.'s trial testimony. Direct examination consisted of a total of three pages, cross-examination spanned two pages, and re-direct and re-cross filled only another one-half page—a total of less than six pages of testimony.

A.N. testified in those pages that she and Land left Bowie County; that, before that time, they engaged in sex at her house and in the bus where Land lived; that she and Land had sex in the pickup truck in which they were traveling, while parked overnight in a Wal-Mart parking lot; and that the sexually explicit photographs that officers recovered from her cell phone and admitted into evidence were of Land and A.N. No graphic details were sought during her trial testimony. She testified on cross-examination that she had wanted to get away from the house, that she loved Land and wanted

11

to be with him, that leaving was her idea, and that she believed Land loved her enough to do anything she asked him to.

In closing arguments, the State referred to A.N.'s statement, which appears only in the recorded interview, that Land had encouraged her to have sex with Land's twenty-six-year-old son. The State briefly argued that, by so doing, Land was grooming A.N. for his own later sexual use. While the argument was made, we do not see that argument or information as very telling, given the other evidence in the record, in the State's effort to prove that A.N. and Land had sex in Bowie County in early 2007.

A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Stated another way, a nonconstitutional error is not reversible if, after reviewing the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the verdict. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *Loun v. State*, 273 S.W.3d 406, 421 (Tex. App.—Texarkana 2008, no pet.). In determining whether the error resulted in harm, we review the whole record and consider the nature of evidence supporting the verdict, the character of the alleged error, the extent that it was emphasized by the State, and how the erroneously admitted evidence might have been considered in connection with other evidence in the case. *See Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

In *Dunn*, we concluded that such a mistake did not affect the substantial rights, based in large part on this state of the evidence:

> At a later time, the two victims testified in person about the same matters, in similar detail . . . .
>
>     . . . .
>
> In no manner can they (the interviews) either be considered unpersuasive or brief. However, the video recordings of those interviews, as well as the commentary by the interviewer, are in all relevant respects the same as the eventual testimony of the victims at trial. The girls testified in person concerning the numerous sexual assaults they had experienced by Dunn's actions. As they did in the video interview, the girls testified concerning Dunn's touching their genital areas with his hands and penis, as well as being forced to engage in oral sex with him.
>
>     The victims' live testimony consumes thirty-seven pages of the record, while the cross-examination continued for another twenty-four pages. The videotapes total an hour in length, and the interviewer's commentary (in which the videotapes were not transcribed) extends for another twenty-eight pages. The State made no specific reference that could be attributed solely to the videotapes or the interviewer's testimony during closing argument.

*Dunn*, 125 S.W.3d at 613, 615.

The core arguments made by Land's trial counsel in his defense were essentially that A.N.'s reports of sexual intercourse with Land were not believable and that Land was motivated by altruism in helping A.N. escape a bad home situation. Those arguments were blunted largely by the graphic photographs of A.N. performing oral sex on Land—admittedly not what was charged and admittedly images depicting acts occurring out of state—instead of the rather clinical, though detailed, recorded interview.[5]

---

[5]We note that the graphic photographs were admitted through the testimony of Officer Craig McCollom with the Clark County Sheriff's Office in Vancouver, Washington, who copied the

Given the other evidence that was before the jury and the rather limited defense theories,[6] we conclude that Land was not harmed by the admission of the recorded interview.

5.  *The Judgment Must be Modified to Reflect the Correct Degree of Offense*

Land's counsel is correct in pointing out that the judgment erroneously recites the conviction was a first-degree felony under Section 22.011 of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.011 (Vernon Supp. 2008). The offense is instead a second-degree felony. While Land's punishment was enhanced to be equivalent to that of a first-degree felony, this offense should be described as a second-degree felony and the punishment should remain unchanged. We, therefore, reform the judgment to reflect the correct degree of the offense. *See* TEX. R. APP. P. 43.2(b).

As reformed, we affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice


Date Submitted:     June 11, 2009
Date Decided:       June 24, 2009

Publish

_____

photographs off of A.N.'s cell phone; their admission was in no way related to or based on the recorded interview of A.N.

[6]Could Land have suggested more or better theories of innocence in the absence of the recorded interview? We think not.