

## NUMBER 13-15-00010-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**PAULO TREVINO,**                                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                    **Appellee.**

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Chief Justice Valdez**

Appellant, Paulo Trevino, was convicted of aggravated robbery, as a habitual felony offender, and he received a forty-five year sentence. *See* TEX. PENAL CODE ANN. § 29.03 (West, Westlaw through 2015 R.S.). By four issues, appellant contends that the trial court: (1) improperly admitted evidence of his extraneous act, (2) admitted evidence without the proper chain of custody; (3) allowed the prosecutor to testify regarding his

convictions; and (4) failed to record his "waiver of his right to be heard regarding his defense against the accusations brought against him . . . ." We affirm.

## I.  BACKGROUND

On October 12, 2012, a man with a gun wearing a hat on his head and a bandana over his face robbed a Compass Bank in Corpus Christi, Texas. Yvette Garcia, a former teller, stated that the man pointed his gun "right at [her]."[1] After instructing the tellers to put money on the counter, the man took the money and ran out of the bank. The trial court admitted into evidence a video showing the robber running away from the bank. In the video, the man runs behind a truck, bends down, and reemerges, after removing his hat, bandana, and green and white checkered shirt. Subsequently, the police recovered the hat, the green and white checkered shirt, and a garment that was described by Detective Rodney Cantu as a stocking/"hosiery-type" garment. None of the State's witnesses saw the robber's face, and none could identify appellant as the robber.

Detective Ralph Lee testified that he arranged for DNA testing to be performed by the Department of Public Safety ("DPS") on the garments found at the scene of the robbery. According to Detective Lee, DNA evidence found on the clothing was processed by a system called "CODIS," which he described as "a big data bank out there in cyber space . . . where they take samples of DNA of known people with their DNA and they put it in this big data bank. . . ." Detective Lee explained that the DPS submits the DNA from evidence to CODIS "like they do fingerprints. [A]nd, if [there is] a match on somebody's DNA [in CODIS], the [DPS] sends you back a letter" stating the identity of the individual who matches that DNA sample on CODIS. Detective Lee stated that once CODIS finds

---

[1] The trial court admitted into evidence a picture of the man pointing the gun at Garcia.

a match, a search warrant issues for the extraction of DNA from the individual identified in order to confirm the CODIS hit. Detective Lee testified that CODIS matched the DNA from the clothing found at the scene of the robbery with appellant's DNA that was stored in CODIS. Detective Lee said that CODIS's finding was verified after a new DNA sample taken from appellant was compared with the DNA found on the clothing.

When asked how long it took for the CODIS match to be confirmed, Detective Lee responded that it took one year and five months, and then he stated, "Well, I knew it was [appellant] before that, but—" At this time, the trial court held a bench conference wherein the State prosecutor stated he was offering extraneous-offense evidence of a prior robbery committed by appellant to show that he used a similar modus operandi in that "he robbed a liquor store wearing a mask, left his hat behind. They collected that hat and they did the same DNA routine with that and it also came back to" appellant. Appellant's trial counsel objected on the basis that "It would make the jury so prejudiced that they would rely on that case to convict him and not on this case, on the evidence of this case." The State prosecutor responded that the State was offering the extraneous evidence merely "to show identity which is the very issue of this case." The trial court stated that the evidence would be admitted "for identity purposes," appellant's trial counsel "urged [his] objection again," and the trial court overruled the objection.

Detective Lee then testified that the week prior to the bank robbery he was assigned to a separate aggravated robbery case. Detective Lee said that he received a video of that aggravated robbery of a liquor store and that

> when [he] got the video from that place, I looked at the suspect in that video. Just the general clothing, this guy was dressed head to toe, long sleeve shirt, mask, hat, clothing, same as the bank robbery. He also had the same—the weapon looked exactly the same in the video. And from my

3

experience on the Police Department, Corpus Christi is such a small town, when I [see] robberies that are like this, 9.9 times out of 10, they're going to be the same suspect, just because the way Corpus Christi is. Very, very few times where you're going to have more than one serial robber out there going in Corpus Christi at the same time.

. . . .

So, I felt—I—well, in that particular robbery, they recovered a hat, a baseball hat. That was also sent to [DPS] for—for DNA testing.

. . . .

That hat was identified [as belonging] to [appellant] before the bank robber was.

The State prosecutor asked, "Okay. So hats left behind at both scenes. . . [had] his DNA?" Detective Lee replied, "Yes, sir." The prosecutor asked, "And you're telling us that's why—you said you had information about this that identified him as your [bank robbery] suspect prior to?" Detective Lee stated, "From my experience, I knew once that the—the hat from the liquor store, which happened a week before the bank robbery happened, I knew that the suspect was going to be [appellant] in both of them."

Texas Ranger Steven Jeter testified that Detective Lee requested that he take a DNA sample from appellant. Ranger Jeter said that he went to the Texas Department of Corrections, found appellant, and took a swab of each side of appellant's mouth pursuant to a warrant.[2] Ranger Jeter stated that when he asked appellant "if he wanted to talk about the charges that were . . . being investigated[, appellant replied,] that it sounded like something he wouldn't have done if he would have been sober, and then [he] refused to talk anymore and said he wanted an attorney." On cross-examination, Ranger Jeter

---

[2] Ranger Jeter stated that appellant was in Texas Department of Corrections for an unrelated charge.

4

said that appellant denied the allegations but then said, "[T]hat wasn't something he would have done if he'd been sober." Ranger Jeter then sent the samples to Detective Lee.

Over appellant's defense counsel's objection on the basis of an incomplete chain of custody of the clothing items found at the scene, Cynthia Morales, a forensic scientist with the Texas Department of Public Safety in Corpus Christi, Texas testified that she examined the pantyhose, a cap, a shirt, and buccal swabs of appellant for DNA evidence. Morales stated that she performed DNA analysis on the above-listed items and that the results indicated the DNA came from appellant. The jury found appellant guilty, and this appeal followed.

## II. EXTRANEOUS OFFENSE EVIDENCE

By his first issue, appellant contends that the trial court violated rules of evidence 403 and 404(b) by admitting evidence of his extraneous acts. *See* TEX. R. EVID. 403, 404(b). Specifically, appellant states, "The record shows that Officer Lee testified that [appellant] was involved in a liquor store robbery without [appellant] being able to defend or deny this extraneous offense" and that "the introduction of this extraneous offense poisoned the minds of the jury, [which] was prejudicial to the defendant in the guilt-innocence phase of the trial." The State argues that appellant's 404(b) complaint is not preserved for our review.

The State offered evidence that prior to his trial in this case appellant had committed a liquor store robbery solely for the purpose of showing the identity of the bank robber. When the State offered this extraneous-offense evidence, appellant objected as follows: "I'm going to object to the probative value versus the prejudicial value that the jury will be, so it would outweigh its probative value" and "[i]t would make the jury so

5

prejudiced that they would rely on that case to convict him and not on this case, on the evidence of this case." From the context of this objection, appellant made it on the basis of rule 403. *See id.* R. 403. However, appellant did not object on the basis of rule 404(b). *Id.* R. 404(b). Therefore, appellant's complaint on appeal that the evidence was inadmissible pursuant to rule 404(b) has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993) (explaining that the appellant's complaint that the trial court improperly admitted extraneous evidence pursuant to rule 404(b) had not been preserved because the appellant's objections at trial were on the basis of hearsay and relevance and were not on the basis that inadmissible extraneous evidence had been admitted). Accordingly, we will only address the admissibility of the complained-of evidence under Rule 403.

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will not disturb the trial court's decision to admit or exclude evidence if it is within the zone of reasonable disagreement. *Id.* A trial court has wide latitude to admit or exclude evidence of extraneous offenses. *See Montgomery v. State*, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990) (en banc) (op. on reh'g).

Rule 403 provides that a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other things, unfair prejudice. TEX. R. EVID. 403. In balancing probative value and unfair prejudice under rule 403, an appellate court presumes that the probative value will outweigh any prejudicial effect. *Id.* at 389. It is the objecting party's burden to demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice. *Hinojosa v. State*, 995 S.W.2d

6

955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *see also Scott v. State*, No. 13-14-00517-CR, 2016 WL 3962673, at *3 (Tex. App.—Corpus Christi July 21, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Kappel v. State*, 402 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2013, no pet.)); *Flores v. State*, No. 13-12-00362-CR, 2013 WL 3326982, at *6 (Tex. App.—Corpus Christi June 27, 2013, no pet.) (mem. op., not designated for publication).

> In determining whether to admit the evidence under rule 403, a trial court
>
> must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006)

At trial, appellant challenged the State's case on the basis that it could not prove the identity of the person who committed the robbery, and he relied on the fact that the witnesses were unable to identify him as the robber. In response, the State offered evidence showing that on a previous occasion, appellant had committed a similar robbery. The trial court admitted the extraneous offense evidence to show that appellant committed the liquor store robbery in the same or similar manner as the person who had robbed the bank. Specifically, Detective Lee testified that the "general clothing" worn by the bank robber and appellant when he robbed the liquor store were similar and that the weapon used by the bank robber "looked exactly the same" as the weapon that appellant used in the liquor store robbery. Detective Lee also stated that appellant left his hat after

7

committing the liquor store robbery, which contained his DNA, and similarly, the bank robber left his DNA, which also matched appellant's, on clothing left at the scene.

The trial court could have reasonably concluded that the inherent probative value of evidence concerning appellant's liquor store robbery was considerable in light of Detective Lee's testimony of the similarities to the bank robbery and that it was highly relevant to the issue of identity. The trial court could have also reasonably concluded that the State's need for this evidence was considerable because none of the witnesses could identify appellant as the bank robber. Moreover, any impermissible inference of character conformity can be minimized by a limiting instruction. *Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996). And, here the trial court provided a limiting instruction in the jury charge.[3] The trial court could have also reasonably concluded that evidence that appellant committed the liquor store robbery did not have any tendency to suggest a decision on an improper basis and that it did not have any tendency to confuse or distract the jury from the main issues in the case, mislead the jury, or cause undue delay or needless presentation of cumulative evidence. Thus, after balancing the various rule 403 factors, the trial court could have reasonably concluded that the probative value of the extraneous offense evidence that appellant committed the liquor store robbery was not substantially outweighed by the countervailing factors specified in the rule. *See*

---

[3] Specifically, the instruction stated:

> You are instructed that if there is any testimony before you in this case regarding the defendant's having committed offenses other than the offense alleged against him in the indictment in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the identity, motive, opportunity, intent, or plan, of the defendant, in connection with the offense, if any, alleged against him in the indictment in this case, and for no other purpose.

8

*Montgomery*, 810 S.W.2d at 392 ("The appellate court should not conduct a de novo review of the record with a view to making a wholly independent judgment whether the probative value of evidence of 'other crimes, wrongs, or acts' is substantially outweighed by the danger of unfair prejudice. It should reverse the judgment of the trial court 'rarely and only after a clear abuse of discretion. . . . The appellate court must measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is to be made."). Therefore, we find no abuse of discretion on the part of the trial court. *See Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) ("[Rule 403] envisions exclusion of evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'"). We overrule appellant's first issue.

### III.    CHAIN OF CUSTODY

By his second issue, appellant contends that the State failed to provide the full chain of custody of the DNA evidence found on the clothing left by the bank robber at the scene. Specifically, appellant complains that during Morales's testimony, the trial court admitted, over his objection to the improper chain of custody, DNA evidence found on the clothing left at the scene of the bank robbery linking him to the crime. However, appellant did not object to Detective Lee's testimony that the DNA found on the clothing matched appellant's DNA. Thus, we need not determine whether the trial court erred by allowing the DNA evidence during Morales's testimony because the same evidence was admitted through Detective Lee's testimony, without a chain of custody objection. *See Land v. State*, 291 S.W.3d 23, 28–29 (Tex. App.—Texarkana 2009, pet. ref'd) ("The admission of inadmissible evidence becomes harmless error if other evidence proving the same fact is properly admitted elsewhere (or comes in elsewhere without objection)."); *see also Valle*

9

*v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error [if any] in the admission of evidence is cured where the same evidence comes in elsewhere without objection.").

We overrule appellant's second issue.

## IV.    PREVIOUS CONVICTIONS

By his third issue, appellant contends that the State failed to produce certified copies of his alleged previous convictions used by the State to enhance his aggravated robbery charge.[4]  The Texas Court of Criminal Appeals stated,

> To establish that a defendant has been convicted of a prior offense, the State must prove beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction.  No specific document or mode of proof is required to prove these two elements.  There is no "best evidence" rule in Texas that requires that the fact of a prior conviction be proven with any document, much less any specific document. While evidence of a certified copy of a final judgment and sentence may be a preferred and convenient means, the State may prove both of these elements in a number of different ways, including (1) the defendant's admission or stipulation, (2) *testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person*, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted.  Just as there is more than one way to skin a cat, there is more than one way to prove a prior conviction.
>
> Texas substantive law does not require that the fact of a prior conviction be proven in any specific manner.  Article 37.07 of the Code of Criminal Procedure permits proof of a defendant's "prior criminal record," but it does not require the production of a certified judgment to prove that prior criminal record.  Any type of evidence, documentary or testimonial, might suffice.  Similarly, Chapter 12 of the Penal Code deals with enhanced penalties for repeat or habitual offenders, but it does not require that the fact of a prior conviction be established in any particular manner or with any specific document.

---

[4] In his brief, appellant has not provided a recitation of the facts concerning this issue, not cited the record wherein the alleged complained-of error occurred, and not cited any pertinent authority supporting his assertion.  *See* TEX. R. APP. P. 38.1(i), (h).

10

*Flowers v. State*, 220 S.W.3d 919, 922 (Tex. Crim. App. 2007) (emphasis added).  Thus, appellant's complaint lacks merit.[5]  *See id.*  We overrule his third issue.

## V.  RIGHT TO BE HEARD

By his fourth issue, appellant contends that the trial court erred in failing to record his "waiver of his right to be heard regarding his defense against the accusations brought against him."  Because appellant has not provided any substantive analysis with citation to appropriate authority, we conclude that this issue is not adequately briefed, and we overrule it.  *See* TEX. R. APP. P. 38.1(i).

## VI.  CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Do Not Publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
29th day of December, 2016.

---

[5] We note that the State presented evidence of appellant's previous convictions through testimony of the prosecutor who was present when appellant was convicted.  *See Flowers v. State*, 220 S.W.3d 919, 922 (Tex. Crim. App. 2007) (explaining that previous conviction may be proved by "testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person").

11