# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00508-CR

---

**Joel Edward Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 80271, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Joel Edward Johnson challenges his convictions for two counts of aggravated sexual assault of a child. *See* Tex. Penal Code § 22.021(a)(2)(b). Because Johnson had previously been convicted of a sexual assault offense, the trial court assessed punishment at the mandatory sentence of life imprisonment and ordered the sentences to run concurrently. *See id.* § 12.42(c)(2) (enhancing punishment for aggravated sexual assault to life imprisonment when defendant has been previously convicted of sexual assault offense). In three issues, Johnson contends that the trial court erred when it permitted specific facts of his previous offense to be presented during the guilt-innocence phase of trial, when it failed to hold an Article 38.37 hearing before allowing the presentation of the extraneous offense evidence as required by the Code of Criminal Procedure, and when it admitted the full video recording of the forensic interview of the victim. Based on the analysis below, we affirm the trial court's judgment of conviction.

# BACKGROUND[1]

Johnson was charged with three counts of aggravated sexual assault of a child and one count of indecency with a child. He was convicted on Counts 2 and 4—aggravated sexual assault of a child by penetration of the child's sexual organ with defendant's finger. Count 1, alleging aggravated sexual assault of a child by making contact with the child's sexual organ with defendant's mouth, and Count 3, alleging indecency with a child by contact by causing the child's hand to touch defendant's genitals, did not result in convictions but the related facts are relevant to understanding the evidence presented at trial and the issues presented here. The child named in all four counts was Johnson's live-in girlfriend's daughter, Amy.[2]

Amy's mother testified that while getting ready for meet-the-teacher night at her children's school on August 16, 2018, Amy, who was nine years old at the time, told her that she woke up without her "Pull-up" on. This prompted her mother to ask Amy if anyone, including Johnson, was touching her. Amy's mother testified that Amy communicated to her that Johnson had touched her vagina with his mouth and fingers. Amy's mother did not initially believe her and did not report the allegations to the Department of Family and Protective Services ("Department") or the police.

Amy's teacher testified that on September 5, 2018, Amy made an outcry to her about Johnson touching her "private areas" with his fingers and mouth and that Amy explained

---

[1] We recite only the relevant facts necessary to resolve the presented issues.

[2] To protect the privacy of the minor victim, we will refer to her by the pseudonym, Amy, and we will refer to her mother, brother, and teacher by their relationship to her rather than by name. *See* Tex. R. App. P. 9.10(a)(3).

she had told her mother but her mother had not done anything about it. Another teacher took Amy to the principal to file a report with the Department.

Ashley Lomas, a Children's Advocacy Center interviewer, testified regarding the forensic interview that she conducted with Amy in September 2018. Lomas testified that Amy told her that once or twice a week for three years, Johnson would touch her with his mouth and fingers and have her touch his penis. After defense counsel unsuccessfully objected to the use of the word "penis" because it was not said during the interview, Lomas further explained that Amy had described her hand being placed on a wet, squishy, cylindrical object that had a metal ring in it. Amy drew a picture for Lomas of the ring that she was describing, and that picture was admitted as evidence at trial. A photo of a penis with two piercings had been previously admitted, and Amy's mother had testified that it was a photo of Johnson's penis that he had sent to her.

Lomas testified that during the interview Amy had demonstrated how Johnson had touched her with his fingers and mouth using male and female anatomical dolls. Amy told Lomas that her mother had told her that if she said none of the touching happened that it would only be a "little white lie." Lomas had asked Amy to describe the difference between a truth and a lie and testified that Amy understood what both meant.

Lomas also testified regarding the forensic interview she conducted with Amy's brother. The brother told Lomas that he did not believe Amy and that he and Amy had made a plan to get Johnson out of the house. Lomas testified that Amy's brother demonstrated "red flags," showed signs of "coaching," and made contradictory statements during the interview. Amy's brother testified that he originally told Lomas that Amy was lying because he wanted the

3

whole family to stay together. The brother testified that shortly before the trial he chose to "come out with the truth," which he testified was that Johnson had also sexually abused him.

Amy, who was thirteen at the time of the trial, testified that Johnson had touched her "private area," which she explained meant "mostly [her] vagina," under her clothes weekly. She was able to name the object with the ring that she had referred to in the interview as Johnson's penis and described the ring as a piercing. She testified that Johnson had made her touch his penis once. She did not mention Johnson touching her "private area" or "vagina" with his mouth and instead testified he had only touched her there with his fingers.

The State presented, and the trial court admitted, the entire recorded forensic interview over Johnson's objections. In the roughly hour-long video, nine-year-old Amy is interviewed by Lomas about her outcries against Johnson. The video corroborated the testimony of Lomas regarding the substance of the interview.

After cross-examination, the State also presented evidence of an extraneous sexual offense of which Johnson had been convicted in Indiana; the judgment from that conviction; testimony from Phillip Wayman, the investigator who was present at Johnson's interview and at the hearing at which Johnson pleaded guilty for the offense; and testimony of the victim of that prior offense, who had been fourteen at the time of the offense. Defense counsel made a series of unsuccessful objections to the evidence presented regarding Johnson's prior conviction. The State then rested. No defense witnesses were called.

After hearing all the evidence, the jury acquitted Johnson of Counts 1 and 3 but convicted him of Counts 2 and 4—the two aggravated sexual assault of a child by penetration offenses. The trial court sentenced Johnson to the statutorily mandated sentence of life

imprisonment due to Johnson's prior sexual offense conviction, *see* Tex. Penal Code § 12.42(c)(2), and ordered the sentences to run concurrently.

## STANDARD OF REVIEW

We review the trial court's decision to admit or exclude evidence, including whether hearsay is admissible under an exception, under an abuse of discretion standard. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex. Crim. App. 1994). A trial court abuses its discretion when its decision "was arbitrary or unreasonable." *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). We will affirm the trial court's decision as long as it was within the "zone of reasonable disagreement." *Id.* "If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). Even if evidence is erroneously admitted, we will not reverse unless the error affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b) (establishing that, for non-constitutional errors, "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").

## DISCUSSSION

*Extraneous Offense Evidence*

In his first two issues on appeal, Johnson contends that the trial court erred when it permitted specific facts of his previous offense to be presented during the guilt-innocence phase of trial and when it failed to hold an Article 38.37 hearing before allowing the presentation of evidence of his prior conviction as required by the Code of Criminal Procedure.

5

Under Article 38.37 of the Code of Criminal Procedure, "evidence that the defendant has committed a separate [sexual assault offense] may be admitted in the trial of an alleged [sexual assault] offense . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." Tex. Code Crim. Proc. art. 38.37, § 2(b). Article 38.37 requires that before the extraneous offense evidence may be presented, the trial judge must "(1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and (2) conduct a hearing out of the presence of the jury for that purpose." *Id.* § 2-a.

In Johnson's first issue on appeal, he contends that although Article 38.37 of the Code of Criminal Procedure allows admission of evidence of extraneous offenses under circumstances that apply to this case, the evidence should be limited to only the existence of the extraneous offense and does not allow for the admission of evidence regarding the details of the offense. The State contends that this issue has not been preserved. Assuming without deciding that this issue was preserved at trial, we conclude that the trial court's admission of details regarding the extraneous offense was not an abuse of discretion because Article 38.37 does not include such limit. *See id.* § 2(b) (allowing for admission of evidence that defendant has committed separate sexual offense against child victim "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant"); *Robisheaux v. State*, 483 S.W.3d 205, 219 (Tex. App.—Austin 2016, pet. ref'd) (affirming admission of extraneous offense evidence under Article 38.37 when admitted evidence included previous victim's detailed testimony of sexual offenses committed against her by appellant). Article 38.37 does not state that the "evidence" is limited to a

6

judgment, and just as Johnson has conceded on appeal that he could not provide any authority in support of his contention otherwise, we also could not find any such authority. Thus, we overrule his first issue. *See Hodge v. State*, 500 S.W.3d 612, 623 (Tex. App.—Austin 2016, no pet.) (concluding that appellant was not prejudiced by trial court's refusal to sever cases because the details of each child victim's testimony would have been admissible in each other's severed cases under Article 38.37).

In Johnson's second issue on appeal, he contends that the trial court erred when it failed to hold an Article 38.37 hearing. *See* Tex. Code Crim. Proc. art. 38.37, § 2-a (requiring trial judge to conduct hearing out of presence of jury for purpose of determining whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt"). The State contends that this issue has not been preserved.

To preserve a claim for appellate review, there must generally be a timely, specific objection that comports with the complaint on appeal as well as an adverse ruling from the trial court. *See* Tex. R. App. P. 33.1(a); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (explaining that complaint on appeal must comport with objection at trial). Further, the objection must state the relevant grounds for the complaint "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." Tex. R. App. P. 33.1(a)(1)(A). Here, defense counsel made no objection to the trial court not holding an Article 38.37 hearing. Thus, we conclude that this issue has not been preserved for review. *See Corporon v. State*, 586 S.W.3d 550, 560 (Tex. App.—Austin 2019, no pet.) (holding that complaints regarding Article 38.37 hearing requirement must be preserved for review with timely specific objection). Because this complaint was not preserved for appellate

7

review, we do not reach the merits of Johnson's second issue. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009) (explaining that if issue has not been preserved for appeal, court of appeals should not address merits of that issue).

*Forensic Interview Video*

In his final issue, Johnson contends that the trial court erred when it admitted the videotaped interview of Amy. Johnson contends that the video contained inadmissible hearsay statements. Hearsay is an out of court statement that a party offers to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Unless an exception applies, hearsay is generally inadmissible. *Id.* R. 802.

The State responded to Johnson's hearsay objection, both at trial and on appeal, that the video was admissible under the rule of optional completeness, which states:

> If a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent. "Writing or recorded statement" includes a deposition.

*Id.* R. 107. Specifically, the State contends that defense counsel attacked Amy's credibility so thoroughly that the entire video became admissible. *See Bezerra v. State*, 485 S.W.3d 133, 142-43 (Tex. App.—Amarillo 2016, pet. ref'd) (holding entire forensic interview recordings admissible under Rule 107 after defense attorney asked witness questions about videotapes). The State also argued at trial that the video was admissible as a prior consistent statement. *Id.* R. 801(e)(1)(B) (classifying statement as not hearsay when it "is consistent with the declarant's

8

testimony and is offered to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying").

Assuming without deciding that the video contained inadmissible hearsay, we conclude that any error in admitting the video was not reversible error because it did not affect Johnson's substantial rights. *See* Tex. R. App. P. 44.2(b) (establishing that, for non-constitutional errors, "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded"); *Prince v. State*, 574 S.W.3d 561, 573 (Tex. App.— Houston [1st Dist.] 2019, pet. ref'd) (concluding "erroneous admission of hearsay evidence is not constitutional error"). "The erroneous admission of evidence becomes harmless error if other evidence proving the same fact is properly admitted elsewhere, or the evidence comes in elsewhere without objection." *Prince*, 574 S.W.3d at 575; *see also Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999) (concluding that "any error in admitting the [hearsay] evidence was harmless in light of other properly admitted evidence proving the same fact"). "In situations where a video recording is improperly admitted, yet the recording is cumulative of the victim's properly admitted live testimony on the same issue, courts often disregard the error." *Land v. State*, 291 S.W.3d 23, 29 (Tex. App.—Texarkana 2009, pet. ref'd).

Here, the contents of the admitted interview video were cumulative of the trial testimony already presented. Specifically, in the interview video Amy told Lomas about making an outcry to her mother on meet-the-teacher night. Amy also told Lomas that about twice a week for about three years, Johnson would come into her room at night when he believed she was asleep and would remove her overnight underwear and touch her "private area" with his fingers on both "the outside and inside" and would also touch her there with his mouth. She also explained that Johnson would place her hand on an object that she could not identify but that she

9

described as cylindrical and slimy like a tongue with no bones and that had half of a metal ring in it. During the interview Amy drew a picture of the ring she was describing. She also demonstrated to Lomas how Johnson had touched her with his fingers and mouth using dolls. She also explained that her mother did not believe her. Amy also stated that prior to her interview her mother had told her that if Amy chose to say that she had lied about her outcry that it would only be considered a white lie. Amy also explained that although her brother was also being abused by Johnson, her brother did not believe her. Amy also explained to Lomas her understanding of what a lie and a truth is and told Lomas she was telling the truth.

The contents of the recorded interview regarding the outcry allegations were cumulative to the combined testimony of Amy and Lomas. Further, Amy's mother testified that she did not originally believe Amy, and Lomas testified that Amy's brother did not believe Amy. Thus, Amy's recorded statements that her mother and brother did not believe her were also cumulative of other testimony. Additionally, Amy's brother also testified at trial that he had also been sexually abused by Johnson, making Amy's video statement about her brother being abused also cumulative.

Thus, we conclude that to the extent the admission of the video was error, it was harmless error. *See Dunn v. State*, 125 S.W.3d 610, 615–16 (Tex. App.—Texarkana 2003, no pet.) (concluding there was no harm in erroneous admission of videotaped interviews although they were approximately one hour long and "[i]n no manner can they either be considered unpersuasive or brief," because victims testified concerning same evidence). We overrule Johnson's third issue.

10

**CONCLUSION**

Because we overrule his first and third issues and cannot reach his second issue, we affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   March 28, 2024

Do Not Publish

11